**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN D. MEYER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION, SHAN-CHIEH CHIEN, JASON WANG, PO-WEN YEN, and CHITUNG LIU,<br><br>Defendants. | Case No. 19-cv-02304-VM<br><br>Hon. Victor Marrero, U.S.D.J. |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR ENTRY OF AN ORDER APPROVING DISTRIBUTION OF THE <u>NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS</u>**

LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
(212) 363-7500

*Plaintiffs' Lead Counsel*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.    CLAIMS ADMINISTRATION TO DATE.................................................................. 2

    A.  Processing Proofs of Claim ................................................................................ 3

    B.  Identification of Deficiencies in Claims.............................................................. 4

    C.  Issuance of Deficiency Letters ........................................................................... 5

    D.  Disputed Claims ................................................................................................. 6

    E.  Quality Assurance Review .................................................................................. 6

    F.  Processing of Late but Otherwise Eligible Claims............................................. 7

II.    DISTRIBUTION PROCEDURE FOR THE NET SETTLEMENT FUND...................... 8

III.    RECORD RETENTION AND DESTRUCTION ............................................................ 10

IV.    AUTHORIZATION FOR ADDITIONAL PAYMENT TO ANALYTICS..................... 11

CONCLUSION.................................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Citigroup Inc. Sec. Litig.*,
   199 F. Supp. 3d 845 (S.D.N.Y. 2016).................................................................................... 10

*In re Goldome Secs. Litig.*,
   No. 88 Civ. 4765-JES, 1991 WL 113263 (S.D.N.Y. June 20, 1991) ......................................... 7

Court-appointed Lead Plaintiff Mark Nelson ("**Lead Plaintiff**"), by his undersigned Court-appointed Lead Counsel Levi & Korsinsky, LLP ("**Lead Counsel**"), respectfully submits this memorandum of law in support of Lead Plaintiff's Unopposed Motion for Entry of an Order Approving Distribution of the Net Settlement Fund to Authorized Claimants (the "**Distribution Order**"). A copy of the proposed Distribution Order is respectfully submitted herewith.[1]

## INTRODUCTION

On May 3, 2021, the Court entered a judgment granting final approval of the Settlement between Lead Plaintiff on behalf of himself and each of the Class Members, on the one hand, and defendants United Microelectronics Corporation ("**UMC**" or the "**Company**"), Shan-Chieh Chien, Jason Wang, Po-Wen Yen, and Chitung Liu (collectively, the "**Settling Defendants**"), on the other hand. ECF No. 73.

As detailed in the accompanying Schmidt Declaration, following Notice, the Claims Administrator received and fully processed 2,470 claims (the "**Presented Claims**"). Schmidt Decl., ¶ 7. Analytics determined that 937 of the Presented Claims are eligible and recommended for approval (the "**Timely Eligible Claims**"), that 66 of the Presented Claims were late but otherwise deemed eligible and recommended for approval (the "**Late But Otherwise Eligible Claims**"), and that 1,467 of the Presented Claims should be wholly rejected by the Court (the "**Rejected Claims**"). Schmidt Decl., ¶¶ 36-38.

The Effective Date set forth in the Settlement has passed, and all claims have been processed. No objections to Analytics' administrative determinations have been received.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as in the Stipulation and Agreement of Settlement filed on July 27, 2020 (ECF No. 55-1, the "**Stipulation**") or the accompanying Declaration of Kari L. Schmidt in Support of Lead Plaintiff's Unopposed Motion for Entry of an Order Authorizing Distribution of the Net Settlement Fund to Authorized Claimants (the "**Schmidt Declaration**").

Accordingly, subject to Court approval, the Net Settlement Fund may now be distributed to Authorized Claimants. Lead Plaintiff respectfully requests that the Court enter the Distribution Order, which approves Analytics' claim determinations and authorizes Analytics to implement the Distribution Plan, as fully set forth in the Schmidt Declaration.

## I.  CLAIMS ADMINISTRATION TO DATE

In accordance with the Court's Preliminary Approval Order (ECF No. 57), Analytics has mailed 40,955 Settlement Notice Packets to all potential Settlement Class Members, brokers, and nominees who could be identified through reasonable effort. *See* Schmidt Decl., ¶ 4. In addition, copies of the Settlement Notice Packets and other documents relevant to the Settlement were posted on www.UMCSecuritiesLitigation.com, the Case Website that Analytics maintained to assist Class Members with accessing information about the case and the Settlement. *Id*. ¶ 5. Analytics also established and continues to maintain a toll-free telephone helpline (1-855-917-4968) to assist potential Class Members. *Id*. Moreover, in accordance with Paragraph 7(b) of the Preliminary Approval Order, Analytics caused the Summary Class Notice to be published over *PR Newswire*, informing readers of the proposed Settlement, how to obtain copies of the Notice, and the deadlines for the submission of Proof of Claim forms, objections, and exclusion requests. *See id*., ¶ 6.

The Notice informed Settlement Class members of the essential terms of the Settlement, Lead Counsel's Fee and Expense Application, and the proposed Plan of Allocation. The Notice also informed prospective Settlement Class members of, among other things, the procedure for submitting Proof of Claim Forms, and for requesting exclusion from the Settlement Class. Once Proofs of Claim were received by Analytics, they were uploaded into a database along with all submitted documentation, and each Proof of Claim was assigned a unique Proof of Claim number.

The Sections below detail the work performed by Analytics to review the Proofs of Claim, identify deficiencies, notify Class Members of deficiencies, and handle quality assurance review.

### A.  Processing Proofs of Claim

Pursuant to the Preliminary Approval Order, each Class Member who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to Analytics a properly executed Claim Form postmarked no later than January 8, 2021, together with adequate supporting documentation for the transactions and holdings reported in the claim. *See* Schmidt Decl., ¶ 7. In preparation for receiving and processing claims, Analytics: (i) conferred with Lead Counsel to define the guidelines for processing Claims; (ii) created a unique database to store claim details, images of claims, and supporting documentation (the "**Settlement Database**"); (iii) trained staff in the specifics of the Settlement so that claims would be properly processed; (iv) formulated a system so that telephone and email inquiries would be properly responded to; (v) developed various computer programs and screens for entry of Class Members' identifying information and transactional information; and (vi) developed a proprietary "calculation module" that would calculate a Recognized Claim pursuant to the Court-approved Plan of Allocation of the Net Settlement Fund. *See id.*, ¶ 8.

Of the 2,470 Presented Claims, 563 are paper claims. *See* Schmidt Decl., ¶10. Following the laborious and time-intensive task of preparing the paper claims, Analytics scanned each paper claim into the Settlement Database, together with all submitted documentation, and assigned a unique claim number to each claim. *Id.* With regard to the 1,907 Presented Claims that were filed electronically (the "**Electronic Claims**"), most are Claims submitted by institutional investors ("**Electronic Claim Filers**" or "**E-Claim Filers**") that may have hundreds or thousands of relevant transactions. *See id.*, ¶ 13. Rather than provide reams of paper requiring data entry, the E-Claim

Filers could either mail a computer disc or electronically submit a file of Electronic Claims to Analytics so that Analytics could upload all of the Electronic Claims to the Settlement Database. *Id*. Once the Electronic Claims were properly formatted by the Analytics electronic filing team, they were loaded into the Settlement Database. *Id*., ¶ 14.

### B.  Identification of Deficiencies in Claims

Analytics undertook an extensive review of the Presented Claims and determined that certain Presented Claims were wholly or partially deficient and flagged those claims as such. *See* Schmidt Decl., ¶¶ 21-28. To process the transactions detailed in the claims, Analytics utilized internal codes ("**Deficiency Codes**") to identify and classify deficiency or ineligibility conditions existing within those Claims and assign appropriate Deficiency Codes to those claims. *See id*., ¶ 11. These Deficiency Codes would indicate to Analytics that the claimant was not eligible to receive any payment from the Net Settlement Fund with respect to that claim unless the deficiency was cured in its entirety. *Id*. Examples of conditions that would make a Claimant ineligible to receive a payment include:

- No documentation submitted for the entire claim

- Duplicate claim submitted

- No eligible purchase during the class period

- No signature

- No recognized claim

- No proof of unsold holdings

*See id*. In order to ensure that claimants were not deemed ineligible when a claim was deficient only in part, Analytics used Deficiency Codes that were applied only to specific transactions within a claim. *Id*., ¶ 12. For example, if a claimant submitted a claim with supporting documentation for

4

all but one purchase transaction, that one transaction would receive a transaction-specific Deficiency Code, indicating that, although the transaction was deficient, the claim would otherwise be eligible for payment if other transactions in the claim calculated to a Recognized Claim pursuant to the Court-approved Plan of Allocation. *See id*. Thus, even if a transaction-specific deficiency was not cured, the claim could still be partially accepted, thus maximizing the portion of the Net Settlement Fund distributed to Settlement Class Members. The process by which Analytics notified claimants of these identified deficiencies and, where possible, helped claimants to resolve them, is discussed *infra* at Section I(C).

### C. Issuance of Deficiency Letters

For claims determined to be wholly or partially deficient, Analytics either mailed or emailed a Notice of Deficient Proof of Claim Submission (a "**Deficiency Notice**" or "**Deficient Claims Email**" depending upon the manner of submission of the claim) to the claimant. Schmidt Decl., ¶¶ 22, 24. Each Deficiency Notice and Deficient Claims Email: (i) described the defect(s) in the claim and what, if anything, was necessary to cure the defect(s) in the claim; (ii) advised the claimant that the claim would be recommended for rejection to the extent that the deficiency or condition of ineligibility was not cured by submitting appropriate information and/or documentary evidence to complete the claim within 10 days from the date of the Deficiency Notice; (iii) advised the claimant that, to contest the administrative determinations made by Analytics, they were required to submit written statements requesting Court review of their claims and setting forth the basis for such requests; and (iv) provided instructions for how to submit corrections (if applicable). *See id*., ¶¶ 22, 24-25.

Analytics reviewed and evaluated all responses to deficiency letters. *See id*., ¶¶ 23, 28. Where Deficient Claims Emails were not accessed, Analytics contacted the E-Claim Filer by

phone and email to remind the E-Claim Filer of the correspondence and response deadlines. *Id.*, ¶ 26. When necessary, Analytics made alternative arrangements for the delivery of the correspondence. *See id.* All claimants' deficiencies have been resolved or timed out, or the claimant has accepted that its claim, in whole or in part, was properly rejected.

### D. Disputed Claims

Claimants were advised of their right to contest Analytics' administrative determination of deficiencies or ineligibility within 10 days from the date of the Deficiency Notice or Deficient Claims Email. *See* Schmidt Decl., ¶ 29. They were also notified that they could request that the dispute be submitted to the Court for review. *Id.* No claimants have contested the administrative determinations made by Analytics or requested review by the Court. *See id.*, ¶ 30.

### E. Quality Assurance Review

Analytics also conducted a quality assurance review throughout the claims administration process. *See* Schmidt Decl., ¶ 33. Analytics' Quality Assurance worked to verify that claims were processed properly by ensuring that information was correctly entered into the Settlement Database, that deficiency and/or rejection codes were assigned accurately, and that Deficiency Notices were sent appropriately. *See id.*

Analytics' Quality Assurance team performed a final quality control check once all of the claims were processed, deficiency and/or rejection notices were sent, and claimants' responses to the Deficiency Notices were reviewed and processed. *See id.* This final Quality Assurance review ensured the correctness and completeness of all claims processed prior to preparing final documents in support of distribution of the Net Settlement Fund. In connection with this quality assurance wrap-up, Analytics: (i) verified that all Proofs of Claim had signatures of authorized individuals; (ii) verified that true duplicate claims were identified, verified, and rejected; (iii)

verified that persons and entities excluded from the Class did not file claims or that their claims were rejected upon review; (iv) performed a final Quality Assurance review of claims and all supporting documentation to ensure completeness of claims; (v) determined that all claimants requiring deficiency and/or rejection notification were sent such notification; (vi) performed a review of deficient claims; (vii) performed additional review of claims with high Recognized Claim amounts; (viii) reviewed claims that were designated invalid; (ix) reviewed claims with a Recognized Claim amount equal to zero; (x) performed other targeted reviews based on claims completion requirements and the approved calculation specifications based on the Court-approved Plan of Allocation; and (xi) re-tested the accuracy of the Recognized Claim amount calculation program. *Id*.

In addition, Analytics reviewed and compared the entire Settlement Database against its "watch list" of known questionable filers, which has been developed throughout its years of experience administering class action settlements. *See id.*, ¶ 34. No Claims were identified as having been submitted by someone on the "watch list." *id*.

### F.  Processing of Late but Otherwise Eligible Claims

Of the 2,470 Presented Claims, 193 were received after the January 8, 2021 claim submission deadline ("**Late Claims**"). Schmidt Decl., ¶3 7. Analytics has processed all of the Late Claims received through October 15, 2021 and determined that 66 of them are otherwise eligible (collectively, "**Late But Otherwise Eligible Claims**"). *See id*. In the interest of maximizing Class participation in the Settlement, Analytics recommends approving the Late But Otherwise Eligible Claims because doing so will not materially delay distribution of the Net Settlement Fund.

Accordingly, Lead Plaintiff requests that the 66 Late But Otherwise Eligible Claims be accepted and included in the distribution. *See In re Goldome Secs. Litig.*, No. 88 Civ. 4765-JES,

7

1991 WL 113263, at *2 (S.D.N.Y. June 20, 1991) (accepting class representatives' request "that certain untimely filed but otherwise valid claims be accepted for approval by the Court and that such persons be included in the list of authorized claimants entitled to share in the net settlement fund").

## II.    DISTRIBUTION PROCEDURE FOR THE NET SETTLEMENT FUND

Under the proposed Distribution Plan, Analytics would conduct an initial distribution (the "**Initial Distribution**") of the Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 5% reserve to address any tax liability and claims administration-related contingencies that may arise, as follows:

(1) Analytics will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. In accordance with the Court-approved Plan of Allocation, Analytics will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claim of all Authorized Claimants.

(2) Analytics will, pursuant to the terms of the Court-approved Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose combined *pro rata* shares of the Claim Fund calculate to less than $10.00. These claimants will not receive any payment from the Net Settlement Fund, and Analytics will send notifications to those Authorized Claimants advising them of that fact.

(3) After eliminating claimants who would have received less than $10.00, Analytics will recalculate the *pro rata* share of the Claim Fund for all Authorized Claimants who

would have received $10.00 or more pursuant to the calculations described in subparagraph (1) above.

(4) The remaining 5% of the Net Settlement Fund will be held in reserve (the "**Reserve**") to address any tax liability and claims administration-related contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be distributed in the "Second Distribution" described below.

*See* Schmidt Decl., ¶ 41(a).

In order to encourage Authorized Claimants to deposit their payments promptly, all distribution checks will bear the following notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." *See id*., ¶ 41(b). Subject to certain exceptions, as outlined in the Schmidt Declaration, Authorized Claimants who do not cash their Initial Distribution checks within the allotted time will irrevocably forfeit all recovery from the Settlement. *Id*., ¶ 41(c). The funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants in the Second Distribution, as described below. *Id*.

Consistent with the Court-approved Plan of Allocation, after Analytics has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution (but not earlier than six months after the Initial Distribution), Analytics will conduct a second distribution of the Net Settlement Fund (the "**Second Distribution**"). *Id*., ¶ 41(d). Any amounts remaining in the Net Settlement Fund after the Initial Distribution, after deducting certain fees and expenses for which Analytics has not yet been paid, will be distributed to all Authorized Claims who cashed their Initial Distribution checks and who would receive at least $10.00 from a Second Distribution based on their *pro rata* share of the remaining funds. *Id*. Additional distributions, after

9

deduction of costs and expenses as described in detail in the Schmidt Declaration, may occur thereafter in six-month intervals until Lead Counsel, in consultation with Analytics, determines that further distribution is not cost-effective. *Id*.

Notwithstanding the foregoing, if Lead Counsel and Analytics determine that the Second Distribution is not feasible in light of its associated costs, the amount remaining in the Net Settlement Fund will be used for a *cy pres* award to the New York Legal Aid Society, a nonsectarian Section 501(c)(3) organization. *See* Schmidt Decl., ¶ 41(e). *See In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 848 (S.D.N.Y. 2016) ("[C]*y pres* designations should be made only when it is not feasible to make further distributions to class members.").

New Claims received after October 15, 2021 (and adjustments to previously-received Claims that would result in an increased Recognized Claim amount received after October 15, 2021) will not be accepted, subject to the following exception. If Claims that would have been eligible for payment under the Plan of Allocation if timely received are received or modified after October 15, 2021, then, at the time that Lead Counsel, in consultation with Analytics, determines that a redistribution is not cost-effective as described above, and after payment of any unpaid fees or expenses, such claimants, at the discretion of Lead Counsel, may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks, to the extent possible. *See* Schmidt Decl., ¶ 41(f).

## III.    RECORD RETENTION AND DESTRUCTION

Lead Plaintiff additionally requests that Analytics be permitted to destroy paper copies of Proofs of Claim and all supporting documentation one year after the Initial Distribution, and that

Analytics be permitted to destroy electronic copies of the same one year after all funds have been distributed.

## IV.    AUTHORIZATION FOR ADDITIONAL PAYMENT TO ANALYTICS

To date, Analytics has incurred $99,160.63 for its work performed on behalf of the Class, including its estimate of fees and expenses to complete the Initial Distribution. *See* Schmidt Decl., ¶ 40. Accordingly, Lead Counsel respectfully requests that the Court approve payment from the Settlement Fund to Analytics of up to $99,160.63 for its outstanding fees and expenses, including its estimated fees and expenses to complete the Initial Distribution.

## CONCLUSION

For the reasons above, Lead Plaintiff respectfully requests the Court enter the accompanying proposed Distribution Order reflecting the foregoing and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 3, 2022

LEVI & KORSINSKY, LLP

/s/ *Gregory M. Nespole*
Joseph E. Levi
Gregory M. Nespole
55 Broadway, 10th Floor
New York, NY 10006
T: (212) 363-7500
F: (212) 363-7171
E: jlevi@zlk.com
   gnespole@zlk.com

*Plaintiffs' Lead Counsel*

11