USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/5/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEVIN D. MEYER, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

UNITED MICROELECTRONICS CORPORATION, SHAN-CHIEH CHIEN, JASON WANG, PO-WEN YEN, and CHITUNG LIU,

Defendants.

Case No. 19-cv-02304-VM

Hon. Victor Marrero, U.S.D.J.

---

**ORDER APPROVING DISTRIBUTION OF THE
NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS**

WHEREAS Court-appointed Lead Plaintiff Mark Nelson ("**Lead Plaintiff**"), by his undersigned Court-appointed Lead Counsel Levi & Korsinsky, LLP ("**Lead Counsel**"), has moved this Court for entry of this Order Approving Distribution of the Net Settlement Fund to Authorized Claimants in the above-captioned class action (the "**Action**"), and the Court having considered all materials and arguments submitted in support of the motion, including the Declaration of Kari L. Schmidt in Support of Lead Plaintiff's Unopposed Motion for Entry of an Order Approving Distribution of the Net Settlement Fund to Authorized Claimants (the "**Schmidt Declaration**") and Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Entry of an Order Approving Distribution of the Net Settlement Fund to Authorized Claimants submitted therewith;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order hereby incorporates by reference the definitions in the Stipulation and Agreement of Settlement filed on July 27, 2020 (ECF No. 55-1) (the "**Stipulation**"), and all

capitalized terms, unless otherwise defined herein, shall have the same meanings as set forth in the Stipulation or in the Schmidt Declaration.

2. The Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Claimants.

3. Lead Plaintiff's Unopposed Motion for Entry of an Order Approving Distribution of the Net Settlement Fund to Authorized Claimants is **GRANTED**. Accordingly,

    a. The administrative recommendations of the Court-approved Claims Administrator, Analytics Consulting, LLC ("**Analytics**") to accept the Timely Eligible Claims set forth in Exhibit D to the Schmidt Declaration and the Late But Otherwise Eligible Claims set forth in Exhibit E to the Schmidt Declaration are approved;

    b. Analytics' administrative recommendations to reject the Rejected Claims set forth in Exhibit F to the Schmidt Declaration are approved;

    c. Analytics will conduct an initial distribution (the "**Initial Distribution**") of the Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 5% reserve to address any tax liability and claims administration-related contingencies that may arise, as follows:

        i. Analytics will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. In accordance with the Court-approved Plan of Allocation, Analytics will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants.

    ii. Analytics will, pursuant to the terms of the Court-approved Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose combined *pro rata* shares of the Net Settlement Fund calculate to less than $10.00. These claimants will not receive any payment from the Net Settlement Fund, and Analytics will send notifications to those Authorized Claimants advising them of that fact.

    iii. After eliminating claimants who would have received less than $10.00, Analytics will recalculate the *pro rata* share of the Net Settlement Fund for all Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph 3(c)(i) above.

    iv. The remaining 5% of the Net Settlement Fund will be held in reserve (the "**Reserve**") to address any tax liability and claims administration-related contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be distributed in the "Second Distribution" described in subparagraph 3(f) below.

    d. In order to encourage Authorized Claimants to promptly deposit their distribution checks, and to avoid or reduce future expenses relating to unpaid distribution checks, all distribution checks will bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." Analytics is authorized to take appropriate action to locate and/or contact any Authorized Claimant who or which has not negotiated his, her, or its payment within said time, as detailed within paragraph 41(b), n.3 of the Schmidt Declaration;

e. Authorized Claimants who or which do not negotiate their payments within the time allotted will irrevocably forfeit all recovery from the Net Settlement Fund. The funds allocated to all such stale-dated checks will be available to be distributed to other Authorized Claimants if Lead Counsel, in consultation with Analytics, determines in its sole discretion that it is feasible to conduct a re-distribution. In the event there are any subsequent distributions, Authorized Claimants who or which do not negotiate their payments for such subsequent distribution(s) within the time allotted will irrevocably forfeit that and any further recovery from the Net Settlement Fund.

f. Consistent with the Court-approved Plan of Allocation, after Analytics has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, which efforts shall consist of the follow-up efforts described within paragraph 41(b), n.3 of the Schmidt Declaration, but not earlier than six (6) months after the Initial Distribution, Analytics will, after consulting with Lead Counsel, conduct a second distribution of the Net Settlement Fund (the "**Second Distribution**"). Any amounts remaining in the Net Settlement Fund after the Initial Distribution (including from the Reserve and the funds allocated for all void, stale-dated checks), after deducting Analytics' fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid, including Analytics' estimated costs of the Second Distribution, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants who cashed their Initial Distribution checks and who would receive at least $10.00 from a Second Distribution based on their *pro rata* share of the remaining funds. Additional distributions, after deduction of costs and expenses as described above and subject to the same

conditions, may occur thereafter in six-month intervals until Lead Counsel, in consultation with Analytics, determines that further distribution is not cost-effective. Notwithstanding the foregoing, if Lead Counsel and Analytics determine that the Second Distribution is not feasible in light of its associated costs, the amount remaining in the Net Settlement Fund will be used for a *cy pres* award to the New York Legal Aid Society, a nonsectarian Section 501(c)(3) organization

        g.      No new claims may be accepted after October 15, 2021, and no further adjustments to previously received claims that would result in an increased Recognized Claim amount may be made, subject to the following exception. If claims are received or modified that would have been eligible for payment or additional payment under the Plan of Allocation if timely received, then, at the time that Lead Counsel, in consultation with Analytics, determines that a redistribution is not cost-effective as provided in subparagraph 3(f) above, and after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, such claimants, at the discretion of Lead Counsel, may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible.

4.      One year after the Initial Distribution, Analytics may destroy the paper copies of the Proofs of Claim and all supporting documentation, and one year after all funds have been distributed, Analytics will destroy electronic copies of the same.

5.  The Court authorizes Lead Counsel to pay to Analytics up to an additional $99,160.63 for its outstanding fees and expenses in administering the Settlement, including its estimate of fees and expenses to complete the initial distribution of the Net Settlement Fund as set forth in **Exhibit G** to the Schmidt Declaration. To the extent there are any subsequent distribution(s), Lead Counsel is authorized to pay Analytics' fees and expenses incurred therewith as set forth in paragraph 41(d) of the Schmidt Declaration.

6.  The Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and any such other further relief as this Court deems appropriate.

**SO ORDERED** in the Southern District of New York on ____January 5____, 2022.

_____
Victor Marrero
U.S.D.J.